501 S.E.2d 793

**Mary Ellen CORCORAN, now Pearson, Plaintiff below, Appellant,**

**v.**

**Rick Earl CORCORAN, Defendant below, Appellee.**

**No. 24488.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 18, 1998.

Decided May 8, 1998.

W. Dean DeLaMater, DeLaMater & Hagg, Weirton, for Appellant.

James T. Cooper, Lovett, Cooper & Glass, Charleston, for Appellee.

PER CURIAM:[1]

The appellant Mary Pearson (formerly Corcoran), plaintiff below, seeks reversal of the April 1, 1997 order of the Tucker County Circuit Court that adopted the findings and recommendations of the Family Law Master regarding child support. Appellant argues that the circuit court erred: (1) in applying a child support reduction retroactively to the date of the filing of the petition for change in custody of one of the four children; (2) in averaging her former husband's income over a period of 3 years; and (3) in computing the amount of child support.[2] We affirm in part, reverse in part and remand.

## I.

On July 28, 1986 the appellant and the appellee, Rick Corcoran, were divorced. The order incorporated a separation agreement which covered the division of property, child custody, and support.

The appellee had no set level of income due to sporadic overtime. On May 21, 1991 the family law master entered an order that allowed the appellant to petition for a yearly examination of the appellee's actual income to determine future and retroactive child support. The recommendations of the family law master were adopted by the circuit court.[3]

On April 29, 1996 the appellant filed her "annual petition" seeking a modification of child support for the previous year based on appellee's actual earnings. In her petition,

---

1. We point out that a *per curiam* opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992).

2. The appellant raised 21 issues of error stemming from the order of April 1, 1997. We address her three major objections; all other assignments of error are without merit.

3. During the ensuing years, a number of petitions were filed and modifications made to the original support award. These modifications have no relevance to this case.

the appellant also requested judgment on the difference between the amount she had been paid under the previous order and the amount due based on the adjusted order. The appellee responded to appellant's petition, and filed a petition of his own.

The appellee also, on August 6, 1996, filed a petition for custody of one of the parties' minor children.. In October 1996, the circuit court by an "Ex Parte Order" transferred custody of the child to the appellee, citing in the court's order that the matter was not scheduled to be heard by the family law master until November 13, 1996. The child proceeded thereafter to live with the appellee.

On November 13, 1996 the family law master heard the parties on all three petitions.

In determining child support, the law master calculated the appellant's income by attributing a minimum wage income to the appellant, and then adding to that amount the money the appellant received from the federal government as an earned income credit. In examining the appellee's income, the law master considered appellee's gross income for the year, and subtracted from his gross income taxes paid, business expenses, and medical costs borne by him in the care of the children. The law master next averaged the current year's income with the previous two years' income. Based on the calculations, the law master determined that the appellant had been overpaid; therefore, the child support was retroactively reduced[4] from January of 1995 through July of 1996. The law master also reduced the amount of child support beginning in August of 1996, the month in which the appellee petitioned for a change in custody of one of the children.

As a result of the November 13, 1996 hearing, the family law master further recommended that the prior arrangement for modifying the child support annually be suspended, and that future modifications were to be retroactive only to the time of service of a petition to modify upon the other party.

Both sides petitioned the circuit court for a review of the order. The circuit court adopted the family law master's recommended order. This appeal followed.

## II.

■ The standard of review for this case is a three-pronged analysis set forth in Syllabus Point 1 of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995).

■ We begin our examination of this case by affirming our previous decisions holding that retroactive modifications of child support obligations are contrary to well-established law. We have stated previously that courts and family law masters may only modify child support awards prospectively, and that "absent fraud or other judicially cognizable circumstance in procuring the original award, a circuit court is without authority to modify or cancel accrued alimony or child support installments." Syllabus Point 2, in part, *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 (1987). *In accord, Robinson v. McKinney*, 189 W.Va. 459, 432 S.E.2d 543 (1993); *Woods v. Guerra*, 187 W.Va. 487, 419 S.E.2d 900 (1992); *Lauderback v. Wadsworth*, 187 W.Va. 104, 416 S.E.2d 62 (1992). This, of course, is subject to the provisions of Rule 29 of the *Rules of Practice and Procedure for Family Law* [1994] which permits retroactive modification of child support to the date a petition seeking modification is served.

■ The first issued raised by the appellant is whether the circuit court erred in using the month that a petition was filed as the month to change the child support formula when the custody of one of the children was transferred from one parent to the other, as opposed to the month the custodial change actually occurred.

Rule 29 of the *Rules of Practice and Procedure for Family Law* [1994] states that "[u]nder appropriate circumstances, modification of an award of alimony or child support may be retroactive to the date of service of the motion for modification upon the opposing party." Because the rule is permissive we find that the circuit court did not abuse its discretion in applying the child support modification retroactive to the date

---

4. The amount was lowered from $1,104.44 to $1,062.53.

appellee served his petition to change custody.[5] We affirm on this issue.

■ The second issue is whether the circuit court erred in averaging the appellee's income over a period of 3 years. In *Ball v. Wills*, 190 W.Va. 517, 522, 438 S.E.2d 860, 865 (1993), we stated that "where a support obligor's income is not a fixed amount, but tends to fluctuate ... sole reliance on the support obligor's year-to-date income is insufficient for the purposes of determining child support, either initially or in the context of a modification."

In 1997 our domestic relations statutes were amended to include a change that expanded the section defining gross income for the purpose of determining child support. The statute states that gross income includes:

> Income from seasonal employment or other sporadic sources: Provided, That the amount of monthly income to be included in gross income shall be determined by averaging the income from seasonal employment or other sporadic sources received during the previous thirty-six-month period or during a period beginning with the month in which the parent first received such compensation, whichever period is shorter[.]

*W.Va.Code*, 48A–1A–19(b)(8) [1997].

Based on *Ball v. Wills, supra*, and *W. Va.Code*, 48A–1A–19(b)(8), we cannot find that the circuit court abused its discretion in averaging the appellee's salary over a period of 3 years.

■ Accordingly, once the obligor's income is determined by averaging his income

over a period of time, that amount is to be used prospectively only and not retrospectively. We affirm the averaging over a 3–year period of time, but reverse the retroactive application of the child support award.

■ Finally, the appellant argues that the circuit court erred in regard to its calculation of the appellee's net income. Specifically the appellant argues that the net income fails to take into account large tax refunds received by the appellee for the 3–year period.[6] We agree with the appellant. In Syllabus Point 1 of *Wood v. Wood*, 190 W.Va. 445, 438 S.E.2d 788 (1993), we stated that the family law master or circuit court must calculate child support based on the guidelines established by the Legislature.

It does appear that for one of the years in question, 1995, the appellee did receive a substantial tax refund.[7] The child support guidelines in effect at the time of this proceeding were codified in the *West Virginia Code of State Regulations*. These regulations provided that "the amount of income tax deducted and withheld by an employer from income of a support obligor ... shall be based on the maximum number of withholding exemptions allowable under the applicable tax law." 78 *C.S.R.* 16–7.1.

Therefore, the amount of gross income used to determine child support was incorrect because it was based, in part, on the 1995 income, which was one of the 3 years used to average the appellee's income. We reverse on this issue and remand this matter for further action. On remand the family law master should also examine the gross income of the other 2 years used to average the appellee's income.[8]

---

5. In this case there was a difference of approximately two months between the time when the petition was served and when the circuit court, by order, formally placed custody with the father.

Furthermore, it should be noted that the West Virginia Legislature in its 1998 session added a new provision, *W.Va.Code*, 48A–2–24a, effective June 6, 1998, to provide that monies distributed by the child support enforcement division may be redirected and disbursed to persons having physical custody of a child when there is a change in physical custody and when certain requirements relating to confirmation of the custodial change are met.

6. Appellant asserts that the appellee claimed no exemptions from his taxes for withholding purposes and then claimed all his dependents when he filed his taxes, thereby artificially reducing his income during the year and resulting in the appellee receiving a large refund.

7. In the record provided to us we have been given only the appellee's 1995 federal income tax forms which show him receiving over $2,200.00 in a tax refund.

8. Once there is a determination of the appellee's income during this 3 year period of time, the family law master must then determine if there

### III.

Accordingly, the circuit court's order of April 1, 1997 is affirmed in regard to the modification date and the averaging of appellee's income over a 3–year period of time. However, the child support award must be applied prospective, and not retroactive; therefore, the retroactive award of support is reversed. Also, the trial court is reversed on the issue of the calculation of appellee's gross income. We remand for further proceedings in accordance with this ruling.

Affirmed in part; reversed in part; and remanded.

was a "substantial change of circumstances" as set forth in *W.Va.Code*, 48A–1B–11 [1997], sufficient to warrant a modification.

While it has no effect on this case it should be noted that the West Virginia Legislature in its 1998 session rewrote many provisions in *W.Va. Code*, 48A–2–35, which will be effective June 6, 1998. One of the new provisions in this section discusses "substantial change of circumstances" as follows:

For purposes of this section, a "substantial change in circumstances" includes, but is not limited to, a changed financial condition, a temporary or permanent change in physical custody of child which the court has not ordered, increased need of the child, or other financial conditions. "Changed financial conditions" means increases or decreases in the resources available to either party from any source. Changed financial conditions includes, but is not limited to, the application for or receipt of any form of public assistance payments, unemployment compensation and workers' compensation, or a fifteen percent or more variance from the amount of the existing order and the amount of child support that would be awarded according to the chid support guidelines.